UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80142-CIV-MARRA/MATTHEWMAN

WHISPERING PINES OF ROYAL PALM
BEACH HOMEOWNERS ASSOCIATION,
INC., a Florida not for profit corporation,

      Plaintiff,

vs.

COMCAST CABLE COMMUNICATIONS,
LLC, a foreign corporation,

      Defendant.

_____/

## ORDER AND OPINION GRANTING MOTION TO DISMISS

THIS MATTER is before the Court on Defendant Comcast Cable Communica-

tions, LLC's Motion to Dismiss Amended Complaint [DE 22].  The motion is fully briefed

and ripe for review.  The Court has carefully considered the filings, entire Court file,

and is otherwise fully advised in the premises.

### Introduction

After this Court's dismissal of all counts in Plaintiff's initial Complaint, Plaintiff

filed an Amended Complaint, again seeking to avoid renewal of the parties' ten year

bulk cable services agreement (the "Contract").  Plaintiff has abandoned its statutory

and tort claims, but now asserts three claims for declaratory judgment.  In Count I,

Plaintiff seeks a declaration that the renewal provision in the Contract is a non-

essential term for which time is not of the essence, and that Plaintiff "substantially

complied" with the notice provision.  In Count II, Plaintiff seeks a declaration that

the renewal provisions is an "unenforceable penalty."  The Court already rejected this theory, but Plaintiff argues that it is now relying on precedent previously omitted and "cogent argument" to support this claim.  Count III, labeled "Declaratory Relief Regarding Whether a Cause of Action for Breach of Contract Exists," asks the Court to declare whether Comcast has a claim for ten years worth of damages if the Association fails to comply with the terms of the renewal clause.  DE 21.

## Legal Standard

With respect to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court observes first that Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court has held that "[w]hile a complaint attacked by a 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above a speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'". *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

As a general rule, the Court must "limit[] its consideration to the pleadings and exhibits attached thereto" when deciding a Rule 12(b)(6) motion to dismiss. *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000) (internal quotation marks and citation omitted). Fed. R. Civ. P. 12(d) mandates that if matters outside the pleadings are presented to the court and not excluded, the motion must be treated as one for summary judgment under Rule 56. There is an exception to this rule for documents that are (1) central to the plaintiff's claim and (2) undisputed. *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002). Undisputed means that the authenticity of the document is not challenged. *Id.*

Additionally, a state declaratory judgment claim will be construed as a federal declaratory judgment claim because the Declaratory Judgment Act, 28 U.S.C. § 2201(a), is procedural, not substantive. *See GTE Directories Publishing Corp. v. Trimen Am., Inc.,* 67 F.3d 1563, 1567 (11th Cir. 1995); *Nirvana Condominium Ass'n, Inc. v. QBE Ins. Corp.,* 589 F. Supp. 2d 1336, 1335 n.1 (S.D. Fla. 2008) (construing claim based on Florida Declaratory Judgment Act as arising under 28 U.S.C. § 2201);

*Chapman v. Clarendon Nat. Ins. Co.,* 299 F. Supp. 2d 559, 563 (E.D. Va. 2004) (federal court construed state declaratory judgment claim as brought under federal declaratory judgment act); *Haagen-Dazs Shoppe Co., Inc. v. Born*, 897 F.Supp. 122, 126 n.2 (S.D. N.Y. 1995) (federal declaratory judgment act governs propriety of declaratory relief in diversity cases under *Erie*); *DeFeo v. Proctor & Gamble Co.*, 831 F.Supp. 776, 779 (N.D. Cal. 1993) (federal declaratory relief action is implicated even in diversity actions).

"The purpose behind the Declaratory Judgment Act is to afford a[ ] form of relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Casualty Indem. Exch. v. High Croft Enter.*, 714 F.Supp. 1190, 1193 n.5 (S.D. Fla. 1989). "The Declaratory Judgment Act 'permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty.'" *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC,* 650 F. Supp. 2d 1213, 1230 (S.D. Fla. 2009) (citing 10B C. Wright & A. Miller, Federal Practice & Procedure, Civil 3d § 2751 (2004)); *Constr. Consulting & Mgmt. Corp. v. Mid-Continent Cas. Co.,* 10-81220- CIV-MARRA, 2011 WL 59151 (S.D. Fla. Jan. 7, 2011).

A court always has discretion as to whether to entertain an action for a declaratory judgment. *See Brillhart v. Excess Insurance Company of America,* 316 U.S. 491 (1942); *Public Affairs Associates, Inc. v. Rickover,* 369 U.S. 111 (1962). "In exercising this discretion, a court must balance the plaintiff's needs for and the consequences of declaratory relief in the context of the purposes of the declaratory

Page 4 of  18

judgment remedy." *Cas. Indem. Exch. v. High Croft Enterprises, Inc.*, 714 F. Supp. at 1193.

<u>Discussion</u>

Automatic renewal provisions allow contracting parties the opportunity to continue under their contract for an additional period pursuant to the terms of their original agreement. Such provisions also typically set out the time frame during which the parties may decide to terminate the contract rather than to renew it for an additional term. The purpose of such automatic renewal provisions is to give the contracting parties the security of knowing that after a certain date the contract will be renewed automatically under the original terms. Lisa Cecily Sherman, Contract Law – the Third Circuit Places Automatic Renewal Provisions in Line With Other Contract Principles Under Pennsylvania Law – *Otis Elevator Co. v. George Washington Hotel Corp.*, 27 F.3d 903 (3d Cir. 1994), 68 Temp. L. Rev. 891 (1995). The renewal provision at the heart of this litigation reads as follows:

**ARTICLE 2.  TERM OF AGREEMENT**

**2.01   <u>Term and Renewals</u>**.  The Effective Date of this Agreement shall commence on October 1, 2001 and shall continue for a term of ten (10) years. Upon expiration of the initial Term, this Agreement shall be renewed automatically unless either party elects not to renew the Term by delivering written notice thereof to the other party at least ninety (90) days prior to the expiration of the initial Term or any renewal term.

Amended Complaint, DE 21 at 15 of 22.

## Count III

Taking the counts in reverse order, Count III asks the Court to declare

[a]ssuming *arguendo* that this Court determines that (i) the Renewal Clause was an essential term of the Agreement where time was of the essence, and (ii) the Renewal Clause is not an unenforceable penalty, and (iii) the Association breached the Agreement by failing to give timely notice under the Renewal Clause, then the question to be answered by this Court is whether the Association's failure to comply with the terms of the Renewal Clause, coupled with its concomitant termination of the Agreement sixty (60) days prior to the end of the contract, gives rise to Comcast's claim for ten years worth of damages.

DE 21, ¶ 59.  The Court finds that this hypothetical question fails to present an Article III case or controversy for a federal court to have jurisdiction over a declaratory judgment claim.  *GTE Directories Publishing Corp. v. Trimen America, Inc.*, 67 F.3d 1563, 1568 (11th Cir. 1995).  Section 2201's "requirement of [an] actual controversy encompasses concepts such as ripeness, standing, and the prohibition against advisory judicial rulings."  *Sheikh v. City of Deltona*, 6:13-CV-1526-ORL-36, 2014 WL 186124 (M.D. Fla. Jan. 16, 2014).  To have Article III standing, "a plaintiff must adequately establish: (1) an injury in fact (*i.e.*, a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (*i.e.*, a 'fairly traceable' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is 'likely' and not 'merely speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)."  *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008) (quoting *Lujan v. Defenders of*

*Wildlife,* 504 U.S. 555, 560-61 (1992)).

Here, Plaintiff seeks an advisory opinion as to its exposure for damages based: (1) on a false premise and (2) which is contingent on unknown factors. First, a failure to give timely notice of an intention to terminate a contract which, in the absence of such notice, is automatically renewed, does not constitute a breach. The failure to give timely notice of termination merely imposes a continuing obligation to perform under the contract. Second, a resolution of Plaintiff's hypothetical question would require the Court to: (1) assume that Plaintiff will fail to perform under the contract after it receives a ruling that it is bound by the renewal provision; (2) assume that Comcast will declare a breach after Plaintiff fails to perform, and (3) speculate on what damages Comcast will be able to prove after a breach.

A judicial determination on these hypothetical questions would be purely advisory and is not permitted. *See Quadomain Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 2007 WL 1424596, *6-7 (S.D. Fla. 2007) (dismissing plaintiff's claim for declaratory judgment decreeing as void provisions of an insurance contract that failed to comply with Fla. Stat. § 627.701). Thus, there is no "bona fide, actual, present practical need for the declaration" that Plaintiff seeks. Accordingly, Comcast's motion to dismiss Count III will be granted. *Trianon Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 741 F. Supp. 2d 1327, 1330-31 (S.D. Fla. 2010) (insured who failed to allege any facts from which District Court could reasonably conclude that it was likely to suffer future injury relating to enforceability under Florida law of coinsurance provision of

property insurance contract, failed to state a cause of action for declaratory relief under Florida law; insured was merely seeking an advisory opinion as to the enforceability of a provision in the contract). Granting Plaintiff leave to amend this count would be futile. As a result, Count III is dismissed with prejudice.

<u>Count II</u>

Count II seeks a declaration that the renewal clause in the Contract is an unenforceable penalty,[1] an argument previously rejected by this Court. *See* DE 20 at 6, 8. Penalties in contracts appear frequently as liquidated damages for loss or injury which may result in the event of a breach of the agreement by one of the parties. The only cases previously cited by Plaintiff to support its position involved issues about liquidated damages, and no valid argument for extending the law to contracts with automatic renewal provisions was made. *See* DE 20 at 6, 8.

Now that the argument has been reasserted, the Court once again reviewed the relevant authorities. While the Court found support for the proposition that "[p]enalty provisions disguised as liquidated damages provisions" are "unenforceable in Florida," no case or other legal support could be found for the proposition that an automatic renewal provision was a penalty of any sort. *Coleman v. B.R. Chamberlain*

---

[1] "[A] specified sum that is unreasonably large when compared to the damage that could have been anticipated from breach of the contract, and therefore punishes the breach, is a penalty, as is a sum which is designed to or has the effect of coercing performance of the contract by making a breach so expensive that it forces adherence to the contract." 24 Williston on Contracts § 65:3 (4th ed. 2014)

*& Sons, Inc.*, 766 So.2d 427, 429 (Fla. Dist. Ct. App. 2000) citing *Hyman v. Cohen*, 73

So.2d 393, 399 (Fla. 1954).  Plaintiff asserts that

> [t]he renewal clause here differs from typical "auto-renew" provisions. The renewal clause purports to auto-renew an agreement that was <u>never</u> designed or reasonably contemplated by the Association or Comcast to be auto-renewed.  The Agreement contains inflated pricing due to infrastructure costs being built in, and it has an elongated term for that same reason.  Hence, the penalty here is not that it auto renews and, perhaps, inconveniences a party to either accept similar services on similar terms or pay reasonable contract damages.  Rather, the penalty here is that if the Association does not cancel the Agreement before the Agreement auto renews, the Association will be required to pay for the infrastructure twice through a second term.
>
> In addition, unlike typical auto-renew clauses, the enforcement of the Renewal Clause imposes incredibly harsh consequences which have no reasonable relationship to actual damages under these facts.  As stated above, Comcast retains the right to sell its cable to the residents on an individual basis, and the fees that Comcast would receive from doing so would far exceed the fees that Comcast would receive under the bulk deal.  Yet it seeks significant damages simply because the Association terminated a few weeks after set in a 10 year agreement.

Response, DE 27 at 13 (emphasis in original).

Plaintiff does not dispute that typical automatic renewal provisions are

enforceable under Florida law, but argues that the renewal provision in this case is

atypical because it was "<u>never</u> designed or reasonably contemplated . . . to be auto-

renewed" and because the Contract contains "inflated pricing."  Plaintiff's assertions

go to the intent of the parties which is at variance with the clear and unambiguous

provisions of the contract.  Where a clear and unambiguous contract provision is at

issue "a court may not consider extrinsic or 'parol' evidence to change the plain

meaning set forth in the contract." *Cost Recovery Services LLC v. Alltel Communications, Inc.*, 259 F. App'x 223, 226 (11th Cir. 2007) quoting *Jenkins v. Eckerd Corp.*, 913 So.2d 43, 52 (Fla. Dist. Ct. App. 2005).

Plaintiff goes on to cite *Crosby Forrest Products, Inc. v. Byers*, 623 So.2d 565, 567 (Fla. Dist. Ct. App. 1993)[2] which quotes Williston on Contracts on what a penalty is and why a penalty is unenforceable -  but no analysis is provided equating a penalty with a renewal provision.  Plaintiff also cites a case that notes Florida courts disfavor provisions that are "disguised" penalty provisions, that Florida does not award windfall damages, and the duty to mitigate damages prevents a party from recovering those damages inflicted by the wrongdoer which the injured party could have reasonably avoided.  *Burzee v. Park Avenue Ins. Agency, Inc.*, 946 So.2d 1200, 1202 (Fla. Dist. Ct. App. 2006);[3] *Graphic Associates, Inc. v. Riviana Restaurant Corp.*, 461

_____

[2]  "A penalty is a sum named, which is disproportionate to the damages which could have been anticipated from breach of the contract, and which is agreed upon in order to enforce performance of the main purpose of the contract by the compulsion of this very disproportion. It is held in terrorem over the promisor to deter him from breaking his promise.  5 Williston on Contracts § 776, at 668.  If damages are readily ascertainable on the date of the contract, a stipulated damages clause is a penalty and unenforceable.  *Hutchison v. Tompkins,* 259 So.2d 129 (Fla. 1972).  If they are not ascertainable the clause is for liquidated damages and enforceable if the amount is not grossly disproportionate to the damages that might reasonably be expected to flow from the breach.  *Lefemine v. Baron,* 573 So.2d 326 (Fla. 1991)."

[3]  "Noncompetition agreement's clause requiring former employee to pay $10,000 plus amount equaling all of commissions earned by former employer from any client that former employee dealt with during two-year period before termination of employment if agreement were breached amounted to unenforceable penalty, not liquidated damages; payment required under clause was grossly disproportionate to

So.2d 1011, 1014 (Fla. Dist. Ct. App. 1984).[4]  Plaintiff urges the Court to apply these concepts and policies to the circumstances in this case.  The Court, however, fails to see how these principles apply here.

More compelling and persuasive are the two cases cited by Comcast which considered and enforced almost identical automatic renewal provisions under very similar circumstances.  *Flagship Resort Development Corp. v. Interval Intern., Inc.*, 28 So.3d 915, 922-23 (Fla. Dist. Ct. App.), *rehearing denied* (2010), involved a 90-day notice period, a 10-year renewal term, and a party that failed to provide written notice of termination while attempting to negotiate new terms.  *Id.* at 919.  The *Flagship* Court found that a party's insufficient notice of intent not to renew entitled the other party to enforce an automatic renewal provision of the contract.

The case *Otis Elevator Co. v. George Washington Hotel Corp.*, 27 F.3d 903 (3d Cir. 1994) has an entire law review article devoted to it.[5]  On December 12, 1980, the owner of a Pennsylvania Hotel ("the Hotel") entered into a ten-year contract with Otis Elevator Company ("Otis") for elevator maintenance and service.  This contract

---

any damages that former employer could have anticipated by a breach."

[4]  "The doctrine of avoidable consequences, commonly referred to as a duty to mitigate damages, prevents a party from recovering those damages inflicted by a wrongdoer which the injured party 'could have avoided without undue risk, burden, or humiliation.' Restatement (Second) of Contracts § 305(1) (1979)."

[5]  *See* Lisa Cecily Sherman, Contract Law – the Third Circuit Places Automatic Renewal Provisions in Line With Other Contract Principles Under Pennsylvania Law – *Otis Elevator Co. v. George Washington Hotel Corp.*, 27 F.3d 903 (3d Cir. 1994), 68 Temp. L. Rev. 891, 892-94 (1995).

included an automatic renewal clause providing for a five-year renewal term unless one of the parties provided written notice of intent to terminate 90 days prior to the end of the initial contract term.  Thirty-one days prior to the end of the contract term the Hotel's controller wrote Otis a letter notifying Otis of the Hotel's intent to terminate the contract as of December 31, 1990.  On December 6, 1990, an Otis representative responded and stated that, in the company's view, the contract already had been renewed for an additional five-year term.

Otis filed suit claiming that the Hotel had failed to honor the automatic renewal provision of the contract.  The Hotel moved for summary judgment on the ground that it had given Otis adequate notice of termination.  In the alternative, the Hotel asserted that the contract had expired on its own terms on December 31, 1990, because the contract language was ambiguous as to the termination notice.

The United States District Court denied the Hotel's motion for summary judgment.  In doing so, the district court determined that the contract's automatic renewal provision was neither ambiguous nor unconscionable under Pennsylvania law. Furthermore, the district court found that Otis presented evidence of damages resulting from the late notice of termination. Thus, the district court determined that the Hotel's late termination notice was ineffective.

On appeal, the Hotel alleged that its letter of intent to terminate thirty-one days before the automatic renewal was sufficient to terminate the contract.  The Hotel argued that the contract did not contain a time-is-of-the-essence clause and

that the record is silent as to any prejudice that Otis suffered.  Further, the Hotel

contended that absent a time-is-of-the-essence clause and a showing of prejudice,

the Hotel's letter was sufficient to terminate the contract.  The United States Court

of Appeals for the Third Circuit discussed the effect of automatic renewal provisions

under Pennsylvania law.  *See Otis*, 27 F.3d at 906-08 (discussing prior decisions

concerning automatic renewal provisions).  The *Otis* Court concluded that late notice

pursuant to an automatic renewal provision in a contract was ineffective regardless of

whether the contract contains a time-is-of-the-essence clause or whether prejudice

was demonstrated. The Third Circuit held that Otis was entitled to enforce the

automatic renewal provision.  *Id.* at 909.

    After examining all related Pennsylvania case law on the subject, the author of

the Temple Law Review article concludes that "[t]he *Otis* Court's decision that a

contract will be automatically renewed if termination notice of the automatic

renewal provision is late was correct because it was consistent with Pennsylvania

contract interpretation principles. The Pennsylvania Supreme Court has stated that

courts should look at the plain meaning of the contract provision to determine the

parties' intent.  Nevertheless, the Pennsylvania Supreme Court has recognized that

equity may outweigh an explicit renewal term in certain circumstances.  The *Otis*

Court applied both of these principles by holding that a court should not depart from

the parties' expressions in an unambiguous contract provision unless unequal

bargaining power or forfeiture existed.  Furthermore, the *Otis* Court's holding that no

time-is-of-the-essence clause was required to enforce the contract was consistent

with Pennsylvania law." *Id.* at 900-01.

Florida and Pennsylvania law in this area are consistent.[6] Florida law provides

that when parties to a contract have selected the language contained therein, and

when that language is clear and unambiguous,[7] the court cannot give the contract

terms a meaning other than that expressed in it[8] or rewrite the contract for the

parties.[9] The parties are bound by the terms to which they agreed.[10] Thus, a

---

[6] Forfeiture is not an issue in this case, so the differences between Florida and Pennsylvania law on enforcing a contract provision that results in forfeiture need not be explored. While Plaintiff asserts in conclusory fashion that "a compendium of unsophisticated volunteer board members agreed to a contract provision that was not reasonable on its face at the outset," Plaintiff does not allege unjust unequal bargaining power such as when a contract is created involuntarily or when parties do not stand on equal footing. *See Bombardier Capital Inc. v. Progressive Marketing Group, Inc.*, 801 So.2d 131, 135 (Fla. Dist. Ct. App. 2001).

[7] *In re ½ Mile Lumber Co., Inc.*, 326 B.R. 876 (Bankr. S.D. Fla. 2005).

[8] *Indemnity Ins. Co. of North America v. Du Pont*, 292 F.2d 569 (5th Cir. 1961); *Hamilton Const. Co. v. Board of Public Instruction of Dade County*, 65 So.2d 729 (Fla. 1953); *Obara v. State*, 958 So.2d 1019 (Fla. Dist. Ct. App. 2007); *Wellington Realty Co. Ltd. Partnership v. ColorAll Technologies Intern., Inc.*, 951 So.2d 921 (Fla. Dist. Ct. App. 2007); *De Slatopolsky v. Balmoral Condominium Ass'n, Inc.*, 427 So.2d 781 (Fla. Dist. Ct. App. 1983); *Bay Management, Inc. v. Beau Monde, Inc.*, 366 So.2d 788 (Fla. Dist. Ct. App. 1978).

[9] *Jacksonville Terminal Co. v. Railway Exp. Agency, Inc.*, 296 F.2d 256 (5th Cir. 1961); *Fuddruckers, Inc. v. Fudpucker's, Inc.*, 436 F. Supp. 2d 1260 (N.D. Fla. 2006); *Barnes v. Diamond Aircraft Industries, Inc.*, 499 F. Supp. 2d 1311 (S.D. Fla. 2007); *Qantum Comm. Corp. v. Star Broadcasting, Inc.*, 382 F. Supp. 2d 1362 (S.D. Fla. 2005); *Churchville v. GACS Inc.*, 973 So.2d 1212 (Fla. Dist. Ct. App. 2008); *Barco Holdings, LLC v. Terminal Inv. Corp.*, 967 So.2d 281 (Fla. Dist. Ct. App. 2007); *Clear Channel Metroplex, Inc. v. Sunbeam Television Corp.*, 922 So.2d 229 (Fla. Dist. Ct. App. 2005); *All-Dixie Ins. Agency, Inc. v. Moffatt*, 212 So.2d 347 (Fla. Dist. Ct. App.

contract must be construed according to its own clear and unambiguous terms.[11]

Accordingly, Comcast's motion to dismiss Count II will be granted.  As a matter of

law, the renewal provision in the contract in question is not an unenforceable

penalty.

<u>Count I</u>

      Count I asks the Court to declare that the renewal provision in the Contract is

a non-essential term for which time is not of the essence, rendering Plaintiff's late

notice of termination sufficient.

      When time is determined to be of the essence of the contract, then the breach

of the time provision is a material breach of the contract.  *Sublime, Inc. v.*

*Boardman's Inc.*, 849 So.2d 470, 471 (Fla. Dist. Ct. App. 2003).  As a general rule, time

is considered to be of the essence: (1) where the agreement specifies, or (2) *where*

*such may be determined from the nature of the subject matter of the contract*, or

---

1968); *Paddock v. Bay Concrete Industries, Inc.,* 154 So.2d 313 (Fla. Dist. Ct. App.
1963).

   [10] *Barnes v. Diamond Aircraft Indus., Inc.*, 499 F. Supp. 2d 1311 (S.D. Fla.
2007); *Qantum Commun. Corp. v. Star Broadcasting, Inc.,* 382 F. Supp. 2d 1362 (S.D.
Fla. 2005); *Morgan v. Herff Jones, Inc.,* 883 So.2d 309 (Fla. Dist. Ct. App. 2004).

   [11] *Avis Rent A Car System, Inc. v. Monroe County*, 660 So.2d 413 (Fla. Dist. Ct.
App. 1995); *Oakwood Hills Co. v. Horacio Toledo, Inc.*, 599 So.2d 1374 (Fla. Dist. Ct.
App. 1992); *McEnally v. Pioneer Woodlawn Utilities, Inc.*, 587 So.2d 623 (Fla. Dist. Ct.
App. 1991); *Hussmann Corp. v. UPS Truck Leasing, Inc.*, 549 So.2d 215 (Fla. Dist. Ct.
App. 1989); *Harbour Square Dev. Corp. v. Miller*, 517 So.2d 773 (Fla. Dist. Ct. App.
1988); *Eller & Co., Inc. v. Galapagos Line*, S.A., 493 So.2d 1061 (Fla. Dist. Ct. App.
1986); *Balto v. Maley*, 464 So.2d 579 (Fla. Dist. Ct. App. 1985).

(3) where notice has been given to the defaulting party requiring that the contract be performed within a stated time, which must be a reasonable time according to the circumstances. *Blaustein v. Weiss*, 409 So.2d 103, 105 (Fla. Dist. Ct. App. 1982) (emphasis supplied).

An example of when time-is-of-the-essence can be determined from the nature of the subject matter is when notice must be given by a certain date to renew a lease. The giving of timely notice, in accordance with the provisions of the lease, is a condition precedent to the lessee's right to renew. *Thrifty Dutchman, Inc. v. Florida Supermarkets, Inc.*, 541 So.2d 634, 636 (Fla. Dist. Ct. App. 1989). *"The rule is grounded on the principle that time-is-of-the-essence in an option contract and that a notice requirement is strictly construed"*[12] (emphasis supplied). No express

_____

[12] Florida courts will grant equitable relief in cases where a "mistake" is accompanied by "special circumstances" that result from the actions of the landlord, or are otherwise not the fault of the tenant. On the other hand, Florida courts have refused to grant equitable relief where the "failure to give notice was due to the negligence of the lessee, unaccompanied by fraud, accident, surprise or mistake." *Thrifty Dutchman*, 541 So.2d at 636 (denying equitable relief where tenant failed to mail notice on time); *see also, Friendship Park Prop. Corp. v. Shaw*, 505 So.2d 456, 458 (Fla. Dist. Ct. App. 1987) (affirming denial of equitable relief where tenant's renewal notice was six months late due to tenant's negligence). The "special circumstances" requirement marks the difference between a mistake that may be relieved by equity and a mistake that may not. "Equity will not relieve against a mistake of one guilty of culpable negligence, neither will it relieve against a mistake that could have been avoided by caution ... [I]f one's mistake is due to his own negligence and lack of foresight and there is absence of fraud or imposition, equity will not relieve him." *Graham v. Clyde*, 61 So.2d 656, 657 (Fla. 1952). In *Group USA, Inc. v. Dolphin Mall Associates, LLC*, 2011 WL 181451, *3 (S.D. Fla. Jan. 19, 2011), Plaintiff's "mistake" was the insertion of an incorrect date on an internal document, and its later reliance on the incorrect date. This mistake was not accompanied by

provision making time of the essence is required in an option contract, since an option by its very terms must be exercised within a specified time and in accordance with specified conditions.  Termination and renewal provisions are in essence option contracts.  "Time is likewise of the essence of options to terminate or cancel an existing contract, and the same principles apply."  15 Williston on Contracts § 46:12 (4th ed. 2014).

While Plaintiff may have acted immediately upon learning of its failure to terminate timely, the fact remains that notice was not given until approximately 23 days after the deadline.  Florida courts have held similar and even shorter delays rendered a renewal notice "untimely and ineffective."  *See, e.g., Douglass v. Jones*, 422 So.2d 352, 354‑5 (Fla. Dist. Ct. App. 1982) (five-day delay).  The delay in this case is not "slight," and "delay alone can be sufficient to deny equitable relief." *Friendship Park*, 505 So.2d at 458 (affirming trial court's denial of equitable relief despite finding that denial would result in unconscionable hardship to tenant); *Group USA, Inc. v. Dolphin Mall Associates, LLC*, 2011 WL 181451, *2-3  (S.D. Fla. Jan. 19, 2011) (An action for declaratory relief in which the Parties sought declaration of their rights under a commercial lease.  Where the "mistake" was the insertion of an incorrect date on an internal document, the mistake was not accompanied by the type of "special circumstances" recognized by Florida courts as warranting equitable

---

the type of "special circumstances" recognized by Florida courts as warranting equitable relief.

relief. Therefore, enforcement of the terms of a valid lease cannot be said to be unconscionable).

The essence of contract law is the objective intent of the parties.  The Automatic Renewal provision in the instant Contract is clear, unambiguous, and cannot not be disturbed by the Court.  As there is no allegations of mistake, fraud or overreaching which would, under Florida law, permit Plaintiff to avoid the requirements of the contract, this Court may not redraft it.  Count I fails as a matter of law because time is presumed to be of the essence in the renewal provision of the Contract and, on the face of the amended complaint, Plaintiff failed to comply with the contract's termination requirements.

**Conclusion**

In accordance with the conclusions made herein, it is hereby

ORDERED AND ADJUDGED that Defendant Comcast Cable Communications, LLC's Motion to Dismiss Amended Complaint [DE 22] is granted with prejudice, as any effort to amend or to provide a more definite statement would be futile.  This case is closed.  Any pending motions are denied as moot.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida, this 19th day of June, 2014.

KENNETH A. MARRA
United States District Judge